IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PETER C. TAPIA,

    Plaintiff,

v.

                                                    Case No. 2:20-cv-00721-MLG-GJF

CHRISTINE WORMUTH,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Christine Wormuth's Motion for Summary Judgment ("Motion"), filed on October 8, 2021. Doc. 20. Plaintiff Peter C. Tapia responded in opposition (Doc. 22), to which Wormuth replied. Doc. 24. Having reviewed the parties' submissions and the applicable law, the Court grants the Motion.

**BACKGROUND**

Plaintiff Peter C. Tapia[1] was employed by the United States Army as an automotive worker at White Sands Missile Range (WSMR).[2] Doc. 20 at 2. As a general matter, automotive workers

---

[1] Tapia was employed by the Army as a civilian worker. Doc. 20-2 at 2:13:8-9. *See* 42 U.S.C. § 12112(b)(5)(A) (defining "discrimination" to include the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or *employee*") (emphasis added); *Jordan v. Choa*, 2006 U.S. Dist. LEXIS 82561, at *10 (S.D. Cal. Nov. 8, 2006) (noting that "uniformed military personnel cannot bring claims under the Rehabilitation Act").

[2] Tapia's proposed clarifications and denials to Wormuth's statement of undisputed facts fall well short of what the Federal Rules of Civil Procedure require. *See* Doc. 22 at 1-6. Rule 56 provides that a party asserting that a fact is genuinely disputed must support the assertion by either citing to particular parts of the record or showing that the materials cited establish the presence of a genuine dispute. *See also* D.N.M.LR-Civ. 56.1(b) (explaining that "[e]ach fact in dispute must . . . refer with particularity to those portions of the record upon which the non-movant relies" and that "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically

1

are expected to be able to service any vehicle that comes into the shop, some of which weigh up to five tons. *Id.* As commonsense would suggest, larger vehicles have correspondingly bigger and heavier parts than passenger vehicles. *Id.* Some of the more sizeable vehicles could be equipped with wheels as tall as four feet. *Id.* However, it was quite rare for Tapia to work on these larger vehicles. *Id.* Instead, he mostly maintained and repaired combustion-powered automotive vehicles including cars, trucks, and light combat vehicles. *Id.* Some of his specific duties included removing, inspecting, and replacing defective parts and changing oil. *Id.*

As part of their qualifications, Army automotive workers must be capable of lifting, handling, and carrying objects weighing up to forty pounds. This requirement is spelled out in the job description:

> PHYSICAL EFFORT: Make repairs while the vehicle is overhead, and where the parts worked on are in hard to reach places. A requirement to stand[,] stoop, bend, stretch and work in tiring and uncomfortable positions is of a frequent nature. Frequent lifting, handling and carrying of parts and equipment weighing up to 40 lbs and occasional lifting of items that weigh 50 lbs is present.

Doc. 20-3 at 2. And although Tapia rarely had to lift at least fifty pounds while on the job, it was not uncommon for him to lift tires weighing approximately thirty pounds. Doc. 20 at 3. He also utilized tools weighing twenty to thirty pounds such as jack stands and impact wrenches. *Id.*

At some point before July 13, 2015, Tapia sustained a back injury while repairing a large tractor tire. *Id.* He notified his (temporary) supervisor, Richard Camacho, of the injury and provided Camacho with medical documentation from a doctor who detailed Tapia's restrictions

---

controverted"). Tapia has failed to comply with these procedural rules. Where he has clarified or denied stated facts, his proposals are either unsupported by citations to the record, immaterial or misleading. *See, e.g.*, Doc. 22 at 3 (disputing the purpose of the scrap yard, which is immaterial to the underlying failure-to-accommodate claim). As a consequence, pursuant to Rule 56(e), the Court disregards his proposed clarifications and denials and considers the following facts, largely taken from the Motion, as undisputed for the purposes of considering the Motion.

on lifting, bending, and lying on the ground. *Id.* at 3-4. Camacho determined that, because Tapia's role required him to frequently lift, bend and stand for long periods of time in awkward positions, it would be difficult for him to continue doing the essential functions of his job. *Id.* at 4. As a result, Camacho temporarily modified Tapia's duties from those typical of an automotive worker to light duty tasks such as inventorying and picking up parts at the tool room. *Id.*; Doc. 20-2 at 8:45:19-23. However, even on light duty, Tapia required assistance with loading and unloading parts to and from his work truck. Doc. 20 at 4.

On September 16, 2015, Dr. Ronald Ross, from the McAfee Army Health Clinic, evaluated Tapia's "work capabilities as compared to his job requirements." *Id.* Dr. Ross issued a letter summarizing his evaluation of Tapia's work limitations and recommended, *inter alia*, a lifting restriction of fifteen pounds. Doc. 20-5 at 1. Dr. Ross further determined that Tapia could not "lift at all except in limited controlled situations" and that Tapia also could not "lift weights above his head or lift weight from the floor up." *Id*. Dr. Ross indicated that Tapia "appears to be capable of sedentary occupations with limited walking and accommodation to his physical limitations." *Id.* at 2.

In September 2015, Tapia—without having requested any specific accommodation—met with Allen Crooks (Camacho's supervisor) to discuss reasonable duty adjustments. Doc. 20 at 3, 5. Crooks stated that, because Tapia "brought in doctors' notes [advising that] he could not lift more than 15 pounds, he could not stand for a long period of time, he could not bend, he could not stoop," and "all of those [actions] are required to do his job as a wheel mechanic," he directed Camacho to restrict Tapia's duties to "light" work that would not violate his profile. Doc. 20-6 at 2:117:8-21. Thereafter, around October 2015 or November 2015, Tapia, Camacho and Crooks met with Johnny Pippen (the Equal Employment Opportunity Manager) to further discuss the

reasonable accommodation process. Doc. 20-7 at 2:108:15-3:109:16. At this meeting, Pippen instructed Camacho and Crooks not to assign duties to Tapia that would violate his profile. *Id.* He also instructed them to look for another position within the organization for Tapia. *Id.*

On December 21, 2015, Enrique Lopez (Tapia's counsel) sent a letter to Pippen outlining Tapia's specific accommodation request, namely, to eliminate lifting of heavy objects from his duties. Doc. 20-8. Tapia's goal was to be placed back in the position of automotive worker (i.e., to be taken out of the tool room) but to only serve on light duty. Doc. 20-2 at 11:84:1-4; 11:85:1-6; 12:89:21-25. He requested an accommodation that would "eliminat[e] lifting heavy items; eliminate the use of ladders and/or stairs; [allow him] to use power tools; [and avoid prolonged periods in an adverse position while using] shop furniture such as creepers and rolling chair[s.]" Doc. 20-8 at 1. In support of this request, Lopez attached a letter from Dr. Ross dated December 1, 2015. *Id.* at 2. Dr. Ross's correspondence addressed the duties Tapia could perform along with the corresponding accommodations that would be required to perform those tasks:

> Employee is generally able to work on small trailers, ATV and small pickup trucks. He can perform such tasks as changing bearings[,] [r]e-wiring, change [sic] oil and other fluids, [and] lubricate [sic]. For these tasks he needs the accommodation of use of power tools and shop furniture such as creepers and rolling chair to avoid prolonged periods in adverse positions. There is no restriction on A level maintenance activities with accommodation to limitations in lifting and mobility. Since he cannot generally lift heavy weights, use ladders or many flights of stairs the work needs to be arranged to avoid these tasks.

*Id.*[3]

The Army was apparently unable to reassign Tapia to a vacant position given these work limitations. Tapia asked James Gallegos (supervisor of the supply warehouse) whether there was

---

[3] Tapia stated that the sole accommodation he required was to eliminate lifting heavy objects from his duties. Doc. 20-2 at 10:72:4-20. He stated that "the only reason [he felt] like [he] wasn't accommodated is because [his position description] says [he is] to lift 50 pounds or more and [he was] not able to." Doc. 20-1 at 13:26:21-23.

4

an open position at the supply warehouse involving light duty work. Doc. 20-2 at 12:86:2-87:22. Gallegos purportedly responded that there was a vacant position but that he was waiting on Crooks to approve the transfer, which never occurred. *Id.* at 12:88:1-10. However, Tapia could not recall specific details about the alleged vacancy, such as the position title or when exactly these verbal conversations with Gallegos took place. *Id.* at 12:88:11-19. Nor could Tapia recall whether there were any existing vacancies at the base for which he qualified or, if there were, whether he had formally applied to them. *Id.* at 13:97:3-8. Neither Camacho nor Crooks were able to locate an internal, vacant position for Tapia that would not violate his work limitations. Doc. 20-4 at 5:69:11-15; Doc. 20-6 at 3:123:10-12. A human resource specialist conducted a search of internal, vacant, and soon-to-be vacant job postings, but was similarly unable to locate an open position for Tapia given his work limitations. Doc. 20-9 at 2:135:8-16.

In July 2016, Tapia was medically cleared to return to his job—albeit with a lifting restriction of twenty pounds. Doc. 20-2 at 8:44:6-45:5. Five months later, Tapia retired on medical disability. *Id.* at 14:103:20-104:3.

On July 20, 2020, Tapia filed a complaint against Defendant Ryan D. McCarthy, the then-Secretary of the Department of the Army, alleging disability discrimination (for the alleged failure to accommodate), hostile work environment, and retaliation and reprisal. Doc. 1 at 5-6. McCarthy answered and asserted that: Tapia was not a qualified individual and could not perform the essential functions of his position with or without a reasonable accommodation; Tapia's requested accommodation would pose an undue hardship on McCarty; and the requested accommodation was not otherwise reasonable. Doc. 6 at 6-7. Tapia then filed a motion for leave to amend his complaint, which the Court granted. *See* Docs. 17, 26. This amended pleading pared down his suit removing the hostile work environment and retaliation and reprisal claims. *See* Doc. 17 at 1.

5

Tapia's sole remaining cause of action is for disability discrimination, specifically, the Army's failure to accommodate. *See* Doc. 29 at 5. On October 8, 2021, Wormuth moved for summary judgment. Doc. 20.

## OPINION

### I.   Legal standard

A party is entitled to summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he moving party bears the initial burden of presenting evidence to show the absence of a genuine issue of material fact." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). The moving party may do so "either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* Once this burden is met, the non-moving party then sets forth specific facts showing there is a genuine issue for trial. *Id.*

Summary judgment may not be avoided by mere disagreement with factual contentions that are supported with competent evidence. That is

> a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.

*Congress v. Gruenberg*, 2022 U.S. Dist. LEXIS 216276, at *15-16 (D.D.C. Dec. 1, 2022). "Conclusory allegations made by a non-movant will not suffice." *United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997). And where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

**II.     Analysis**

The Rehabilitation Act of 1973[4] prohibits covered entities—which includes the Department of the Army—from discriminating against a qualified individual on the basis of disability. 29 U.S.C. § 794. To achieve this objective, covered entities are required to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A). The remedies include injunctive relief, *see Barnes v. Gorman*, 536 U.S. 181, 187 (2002), and compensatory damages. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992).

Here, Tapia's lone claim for relief asserts that the Army failed to accommodate his disability as required by the Rehabilitation Act. To prove up the viability of his claim, Tapia must demonstrate the following: (1) he was disabled; (2) he was otherwise qualified; (3) he requested a plausibly reasonable accommodation; and (4) the employer refused to accommodate his disability. *See Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). If Wormuth can conclusively rebut at least one of these elements or establish an affirmative defense, summary judgment in her favor is appropriate. *Id.* If, however, Tapia establishes a genuine dispute of material fact or presents evidence establishing a genuine dispute regarding the affirmative defense(s), then summary judgment is inappropriate. *Id.* Because the parties do not dispute that Tapia was disabled within the meaning of the statute or that the Army refused to accommodate Tapia's disability, Doc. 20 at 9; Doc. 22 at 8, the Court limits its discussion to whether Tapia was otherwise qualified and whether he requested a plausibly reasonable accommodation.

---

[4] The same standards apply under the Rehabilitation Act, 29 U.S.C. § 794(d), as under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111. For this reason, the Court cites to both Acts, as well as regulations pertaining to and case law interpreting those statutes. *See Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997).

**A.      The Court concludes that Tapia was not otherwise qualified.**

In the context of the Rehabilitation Act, the term "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In determining whether a person is a "qualified individual" the Tenth Circuit applies the following two-step inquiry:

> First, the court determines whether the individual can perform the essential functions of the job. Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable [her] to perform those functions.

*Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1267 (10th Cir. 2015). At each step, "[t]he plaintiff bears the burden of showing she is able to perform the essential functions of her job." *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004).

**i.      Lifting, handling, and carrying objects weighing up to forty pounds is an essential function of the automotive worker position.**

"Courts require an employer to come forward with evidence concerning whether a job requirement is an essential function." *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 889 (10th Cir. 2015); *see also Mason*, 357 F.3d at 1119 (explaining that the initial burden rests on the employer to describe the job and the functions required to do that job). "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1) (2012). Relevant considerations for assessing whether a particular function is an essential one include "(i) [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; (iii) [t]he amount of time spent on the job performing the function"; and/or "(iv) [t]he consequences of not requiring the incumbent to perform the function," among other

8

correspondingly larger and heavier parts that (although rare[5]) come through the shop. This issue is compounded when considering that automotive workers are expected to be able to work on any Army vehicle. Finally, there are safety concerns—both for the mechanic and the individual who eventually drives the combat vehicle—that explain the need for a lifting requirement. *See* Doc. 20-7 at 3:109:17-25 (Pippen's deposition testimony) ("[T]he ramifications of [violating an employee's medical restrictions] could be devastating . . . a lot of harm could be caused to the employee . . . [and] we can still be . . . liable for any and all damages[.]"); *cf. Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 995-96 (10th Cir. 2001) (holding that the plaintiff, because he was required to take medication to control seizures, could not meet the necessary job-related physical requirements to perform as a commercial vehicle operator). Thus, the Court finds that the essential functions of an automotive worker include the ability to lift, handle, and carry objects weighing up to forty pounds.

Tapia nevertheless avers that the lifting of heavy objects does not constitute a core job function. Doc. 22 at 14. The problem is that Tapia offers nothing to substantiate his claim saying only (and without citation to the record) that "[h]eavy lifting was not an essential job function of a maintenance mechanic." *Id.* Moreover, Tapia's contentions are inconsistent with his deposition testimony, where he conceded that the job required frequent lifting, that he was obligated to carry parts and equipment, that he would carry tools weighing twenty to thirty pounds, and that he would sometimes have to lift or carry thirty-pound tires in the course of his work. Doc. 20-2 at 6:30:11-23; 6:31:25-32:10. Tapia has failed to sufficiently dispute the evidence or otherwise show that

---

[5] The Court notes that, as a general matter, the term "essential functions" does not include the marginal functions of the positions. § 1630.2(n). However, essential functions encompass even those duties that are performed only rarely if the potential consequences of the inability to perform that function are sufficiently severe. *See, e.g., Hennagir v. Utah Dept. of Corr.*, 587 F.3d 1255, 1258-59 (10th Cir. 2009) (holding that "when the potential consequences of employing an individual who is unable to perform the function are sufficiently severe, such a function may be deemed essential" even if it is "rarely required in the normal course of an employee's duties").

lifting heavy objects is nonessential.

Ultimately, the requirement to lift, handle, and carry objects weighing up to forty pounds appears to be "job-related, uniformly enforced, and consistent with business necessity." *See Davidson*, 337 F.3d at 1191. The Army has a right to establish what is required to perform the role of an automotive worker. *See id.* It is not the Court's role to second guess that expertise or require the Army to lower its standards of quality with respect to its general equipment maintenance. *See id.* Based on the foregoing, the Court is left to conclude that the essential functions of the Army automotive worker include lifting, handling, and carrying objects weighing up to forty pounds.

ii. **Tapia was unable to perform this essential function.**

Because the Court finds that lifting, handling, and carrying items weighing up to forty pounds is an essential function of the automotive worker position and because it is undisputed that Tapia was restricted from lifting objects weighing more than fifteen to twenty pounds, *see* Doc. 20 at 4-7, *see also* Doc. 22 at 3-6, it follows that Tapia was unable to perform an essential function of his job.

iii. **There were no reasonable accommodations that would enable Tapia to perform as an automotive worker.**

Having determined that Tapia could not perform an essential function of the automotive worker position, the Court must assess whether there were any reasonable accommodations that would enable Tapia to perform that function. *See Osborne*, 798 F.3d at 1267. The Tenth Circuit utilizes the following burden-shifting framework to analyze the issue: "(1) the plaintiff has the initial burden to show an accommodation is reasonable on its face, then (2) the defendant must show it cannot provide the accommodation without undue hardship, and finally (3) the plaintiff must rebut the employer's evidence based on her individual capabilities." *Id.* at 1269. A reasonable accommodation may include "making existing facilities used by employees readily accessible to

and usable by individuals with disabilities" or "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(A)-(B).

By contrast, "[a] proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function at issue." *Osborne*, 798 F.3d at 1267. Likewise, a reasonable accommodation does not include modifying or reallocating essential functions of an existing position. *See Mason*, 357 F.3d at 1122-23. If the employee presents a facially reasonable accommodation, then the burden shifts to the employer to present evidence of its inability to accommodate. *Osborne*, 798 F.3d at 1267. Once the employer makes this showing, then the burden shifts back to the employee to rebut the employer's evidence based on her individual capabilities. *Id.* at 1268.

Wormuth argues that there were no reasonable accommodations that would allow Tapia to perform the essential function. Doc. 20 at 12-15. Namely, Tapia requested to be exempt from heavy lifting altogether which does not constitute a reasonable accommodation. *Id.* at 13. Predictably, Tapia disagrees and claims that he was wrongly denied reasonable accommodations—despite his admission that he could still perform the essential functions of his role even with the lifting restriction. Doc. 22 at 13-14, 17.

The Court concludes that Tapia has failed to overcome his initial burden. His requested accommodation would relieve him from performing the essential function of lifting, handling, and carrying items weighing up to forty pounds. Accordingly, the Army was not required to provide this accommodation. Nor was the Army required to modify or reallocate the function, as Tapia

seems to suggest when he asserts that "[t]here are plenty of employees that love to work on heavier vehicle [sic]." Doc. 22 at 5. Because he has failed to show that his requested accommodation was reasonable on its face, there is no need to continue with the burden shifting framework. *See Osborne*, 798 F.3d at 1269. Wormuth has conclusively rebutted the second element of Tapia's failure-to-accommodate claim and, in turn, Tapia has failed to rehabilitate that element. Therefore, summary judgment in her favor is warranted.

**B.     The Court concludes that Tapia did not request a plausibly reasonable accommodation.**

There is considerable overlap between the preceding discussion of "reasonable accommodations" and this third element of "plausibly reasonable accommodations." As stated earlier, "an employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation." *Mason*, 357 F.3d at 1122. Likewise, employers are not required to modify an essential function of an existing position or reallocate the essential functions of the job in order to accommodate a disabled employee. *Id.* at 1123.

Wormuth avers that, because the Army was not required to eliminate essential job functions of the automotive worker position, Tapia's request that heavy lifting be eliminated from his job duties was not a plausibly reasonable accommodation. Doc. 20 at 15. Tapia disagrees but the specifics of his argument are difficult to follow. As the Court understands it, Tapia asserts that he was "medically cleared to return to his job" albeit with a lifting restriction of twenty pounds, which Wormuth could not accommodate. Doc. 22 at 18. However, he fails to specify the nature of his accommodation request or provide any details that would support his argument. *Id.* In her reply, Wormuth maintains her position that, because there is no genuine issue of material fact as to whether Tapia requested a plausibly reasonable accommodation for the lifting restriction,

13

summary judgment in her favor is warranted. Doc. 24 at 11-12.

The Court agrees with Wormuth and finds that Tapia has not put forward evidence to demonstrate the existence of a reasonable accommodation. As discussed in the foregoing sections, an essential function of an automotive worker is to frequently lift, handle, and carry objects weighing up to forty pounds. The undisputed facts demonstrate that Tapia was initially medically cleared to lift up to fifteen pounds which was then improved to twenty pounds (Doc. 22 at 3, 6) and that he requested an accommodation that would "eliminate lifting heavy objects" (i.e., objects weighing more than twenty pounds) from his role. *Id.* at 5. But it was not plausibly reasonable for the Army to relieve Tapia from performing an essential function of his job: lifting items weighing up to forty pounds. *See Mason*, 357 F.3d at 1122-23. Nor was it plausibly reasonable for the Army to modify (e.g., to lower the required weight lifting threshold for the position) or reallocate (e.g., to shift the heavy lifting to other employees) this essential function. *See id.* Therefore, the Court concludes that Wormuth has conclusively rebutted Tapia's assertion that he requested plausibly reasonable accommodations and, in turn, Tapia has failed to rehabilitate this element. Summary judgment in Wormuth's favor is thus warranted.

**C.     Failure-to-Reassign**

Lastly, Tapia makes a passing reference to the Army's failure to reassign him to another position within the organization. Doc. 22 at 12. The Court does not interpret this reference as an attempt to make out a prima-facie claim of failure to accommodate by offering reassignment to a vacant position. *See generally* Doc. 29 (amended complaint). *See Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1178-79 (10th Cir. 1999) (describing the elements of such a claim including a showing that "[t]he employee was qualified, with or without reasonable accommodation, to perform one or more appropriate *vacant* jobs within the company that the

14

employee must, at the time of the summary judgment proceeding, *specifically identify and show were available within the company at or about the time the request for reassignment was made*") (emphasis added).

Even assuming *arguendo* that Tapia made an initial showing of the requisite elements, Wormuth has conclusively rebutted at least one necessary element: Tapia failed to specifically identify any existing vacant positions that were available when he purportedly requested reassignment. *See* Doc. 20 at 7. Tapia admits that he "could not recall what the title of the [vacant] position was, whether it was a formal vacancy, [] when the conversations with the supply warehouse supervisor occurred" or "identify any existing vacant positions for which he was qualified and could not recall applying to any such positions." Doc. 22 at 5-6. Thus, to the extent that Tapia posits a failure-to-reassign claim, Wormuth has conclusively rebutted an essential element of that claim by demonstrating that Tapia was unable to specifically identify and show whether there were any existing vacant positions within the company at or about the time the request for reassignment was made. *See Smith*, 180 F.3d at 1179.

## CONCLUSION

For the foregoing reasons, the Court holds that summary judgment in Wormuth's favor is warranted. The Court grants the Motion. Doc. 20.

It is hereby ordered that summary judgment is entered in favor of Wormuth. Tapia's failure-to-accommodate claim is hereby dismissed with prejudice. The Court shall issue a Rule 58 judgment separately. It is so ordered.

MATTHEW L. GARCIA
UNITED STATES DISTRICT JUDGE

15